**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MATTHEW MIRABELLO

                Plaintiff,

        v.

THE AMERICAN MUSEUM OF NATURAL
HISTORY,

                Defendant.

Case No.: 20-CV-5056


**COMPLAINT**

**JURY TRIAL DEMANDED**


**COMPLAINT AND DEMAND FOR JURY TRIAL**

      Plaintiff Matthew Mirabello, ("Plaintiff" or "Mirabello") by and through his attorneys, Danny Grace, P.C., as and for his Complaint in this action against the American Museum of Natural History, ("Defendant," or the "Company") alleges upon personal knowledge and upon information and belief as to the matters as follows:

**NATURE OF THE CLAIMS**

      1.     This is an action for declaratory, injunctive, equitable relief, as well as monetary damages to redress Defendant's unlawful employment practices against Plaintiff, including discriminatory and retaliatory treatment of Plaintiff in violations of the Americans with Disability Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. §§12101 et. Seq. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. §§2601 et. Seq. ("FMLA"), the New York State Human Rights Law, New York Executive Law §§ 290 et. Seq. ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code §§8-101et. seq. ("NYCHRL").

2.      Defendant, its owners, managers, and employees decided, unlawfully and recklessly, to treat Plaintiff in a derogatory manner based on his disability. After he complained about such unlawful treatment, Defendant retaliated and terminated Plaintiff absent any other cause.

3.      Defendant's conduct was knowing, malicious, willful and wanton and showed a reckless disregard for Plaintiff, which has caused and continues to cause economical and non-economic damages, and severe mental anguish and distress.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under ADA pursuant to 42 U.S.C. §§ 12101 et. Seq., and FMLA pursuant to 29 U.S.C. §§2601 et. Seq.

5.      This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367 (a).

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court, Southern District of New York, pursuant to 28 U.S.C. §1391, because Defendant was incorporated, located, and conducted business in this district and because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PROCEDURAL REQUIREMENTS

8.      Prior to the commencement of this action, Plaintiff filed a verified charge to the Equal Employment Opportunity Commission("EEOC") on November 1, 2019, charging

Defendant with unlawful discrimination in relation to Plaintiff's employment and arising out of the same facts alleged herein.

9.    Plaintiff received a Right to Sue letter from the EEOC on or around April 6, 2020.

10.    This Complaint has been filed within 90 days of Plaintiff's receipt of Right to Sue letter.

11.    Contemporaneous with the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of §§8-502 of the New York City Administrative Code.

12.    Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

13.    Plaintiff is a former employee of Defendant and resides in, as well as is a citizen of, the State of New York.

14.    Plaintiff was hired by Defendant on January 4, 2010, and remained employed full-time, working at least 40 hours every week, and 1,250 hours in twelve months in the Southern District of New York, until his unlawful termination on September 19, 2019.

15.    At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

16.    Defendant is a scientific and cultural institution and a public non-profit organized and existing by virtue of the laws, statutes and charters of the State of New York.

17.    Defendant maintains its corporate headquarters and principal place of business at Central Park West 79th St., New York, NY 10024.

18.    At all relevant times, Defendant was Plaintiff's direct employer.

19.     At all relevant times, Defendant has met the definition of an "employer" under all applicable statutes.

## FACTUAL ALLEGATIONS

20.     Plaintiff began his employment with Defendant on January 4, 2010, and his salary was $52,000.00. Plaintiff was initially employed as a Program Instructor.

21.     During his employment, Plaintiff consistently met and exceeded all expectations, and his salary was raised to $64,000.00 by the time of his unlawful termination. Plaintiff's job title was also promoted to Coordinator of Professional Development.

22.     Despite his work performance, Plaintiff suffered discrimination and harassment, and was subjected to a hostile working environment due to his disability.

23.     When Plaintiff engaged in a protected activity the Company retaliated and unlawfully terminated him.

24.     Specifically, throughout his employment Plaintiff was subjected to unfair and hostile workplace practices by the Company, and through his supervisors, Ms. Colleen Owen ("Owen"), Ms. Linda Curtis-Bey ("Curtis-Bey"), and Mr. Hudson Roditi ("Roditi").

25.     This included being treated differently and held to different standards than other similarly situated employees who had no disability, as outlined herein.

26.     Since December 2014, Plaintiff suffered disabilities including mental impairment, depression and anxiety disorder.

27.     Plaintiff's mental impairment substantially limited his major life activities, including sleeping, learning, reading, communicating, and working without a reasonable accommodation.

28.     The reasonable accommodations required by Plaintiff in the workplace were a delayed start and end of day (10am to 6pm) as needed, and to work remotely 2 days a week.

29.     In October 2016, Plaintiff requested these reasonable accommodations, and made the Company, including his supervisor at that time Hudson Roditi, aware of his disability and need for the accommodation.

30.     The accommodation was only partially granted in September 2017, with refusal of the company to engage in any interactive process while stating that Plaintiff was not covered by the ADA.

31.     Noticing how distressed Plaintiff was by the Company's refusal to engage in the interactive process, a Company representative instead encouraged Plaintiff to call the Museum's help line for staff to get mental health assistance.

32.     Another manifestation of Plaintiff's disability was that he had difficulty remembering the content of meetings.

33.     In December 2018, and then in May 2019 (after Owen, his supervisor at that time, ignored Plaintiff's initial request), Plaintiff requested a reasonable accommodation to record meetings so he could relisten and/or transcribe them.

34.     Owen had actually previously complained about Plaintiff's challenges in remembering all details but refused to let him record the meetings in order to review later.

35.     At all times, Plaintiff could perform the essential functions of his position, and the accommodation was designed to increase his efficiency and allow Plaintiff equal access to the benefits and privileges of employment that were enjoyed by similar employees.

36.     In support of this request Plaintiff submitted all documents, including doctor's notes as requested by the Company.

37.     However, the Company refused the request and refused to conduct an interactive dialogue, as required by statutes and state/local laws. These denials were a repeated occurrence throughout Plaintiff's employment.

38.     Owen then treated Plaintiff in a discriminatory and hostile way and demanded that he keep specific hours and not arrive to work early without prior approval, specifically after 9 am but not before 10am, despite other colleagues she managed who routinely arrived before 9am or left after 5pm.

39.     Owen kept ignoring Plaintiff and failed to reply to his emails in a timely fashion resulting in diminished performance.

40.     Furthermore, Plaintiff was exposed to repeated hostile behavior toward him. Owen's discriminatory and hostile actions included, but were not limited to conflation of minor mistakes and errors into significant ones, intimidating nonverbal behaviors, exclusion from workplace collaborations and learning opportunities, withholding resources and information necessary to the job, behind-the-back sabotage and defamation, excessively harsh or irrelevant criticism, and unreasonably heavy and unusually constrained work demands designed to ensure failure.

41.     This continued discriminatory treatment led to a hostile working environment and Plaintiff's mental impairment evolved into serious physical manifestations.

42.     In January 2019, Owen told Plaintiff that she would not approve his vacation time unless certain tasks were completed to Owen's satisfaction. Owen did not place such requirements on Plaintiff's similarly situated colleagues.

43.     The same month, Plaintiff complained to Owen regarding her discriminatory and retaliatory treatment and told her that this treatment lead to anxiety and headaches which worsened his mental impairment.

44.     Plaintiff attempted to file a complaint through the program's liaison (John Tom) at the NYC Department of Education (who fund the program that Plaintiff was working on). Instead of assisting Plaintiff,  the liaison did nothing to address concerns and instead reported the complaint to his former boss Linda Curtis-Bey, who was now the Plaintiff's supervisor.

45.     This resulted in further retaliation from Owen culminating in Plaintiff suffering a panic attack on April 22, 2019.

46.     Stunned that his complaints were being ignored, and the situation was actually exacerbating, in April 2019, Plaintiff complained to LaToya Young in the Human Resources Department of Defendant ("Young") that his supervisor was discriminating against him because of his disability and his requests for a reasonable accommodation due to his disability.

47.     Plaintiff outlined that while he was working remotely, his supervisor assumed that he could not have been productive due to his disability and requested that he report the details of his work on a daily basis while other members on the team without disabilities were not subject to the same policy.

48.     Young failed to investigate the discriminatory complaints in response to Plaintiff's complaint. Plaintiff then requested the Company conduct a formal investigation on April 22, 2019.

49.     Furthermore, on April 25, 2019, having been subjected to this hostile environment, Plaintiff requested FMLA leave from April 26, 2019, to May 8, 2019, to care for his mental health.

50.     This request was made reluctantly due to Plaintiff's fears for his employment. However, Plaintiff felt he had no choice as his ability to take paid time off was being impinged by

the Company, in retaliation to his protected complaints. In support of his request, Plaintiff provided his doctor's notes.

51.     On May 13, 2019, Plaintiff again complained to the Company's Human Resources Department of the hostile working environment he was being subjected to as a result of his disability.

52.     Plaintiff also filed a workplace compensation claim but was unable to get evaluated by a workplace compensation approved doctor.

53.     Instead of conducting a sufficient investigation as required by related statutes and state/local laws the Company retaliated against Plaintiff and placed him on administrative leave.

54.     After a time, the Company demanded that in order for Plaintiff to be allowed to return to work, the Company had to speak to his doctor directly. This act, in and of itself, was unlawful.

55.     The Company refused to inform Plaintiff what they wanted to ask his own doctor or why they needed to talk to him.

56.     Plaintiff, realizing that he had no available alternative, relented and asked his doctor to speak to the Company, who only then allowed him to return to work.

57.     Once the Company did talk to Plaintiff's doctor, they did not ask anything they had not already been told.

58.     Following his return, the Company 1) proffered a negative yearly review authored by Owen in which Plaintiff received poor scores for times he was on both FMLA and Administrative Leave, 2) changed Plaintiff's job duties, 3) placed Plaintiff on a performance improvement plan ("PIP") with deliverables relating to Plaintiff's former role. 4) Retroactively

rating Plaintiff's performance poorly on items that had already been related as adequate or higher in his mid-year review.

59.     This led to Plaintiff requiring a further two days of FMLA leave to care for his mental health, when in fact he needed more.  These days were taken at the very end of August approximately 4 weeks after Plaintiff returned to work, and 3.5 weeks into his PIP.

60.     Upon his return from his FMLA leave, Plaintiff's work began to be actively sabotaged by Hudson Roditi.

61.     Plaintiff had sought assistance from a colleague of 10 years, whose work Plaintiff needed to replicate. Roditi, who did not supervise Plaintiff's colleague directly, pulled the colleague outside the office for a meeting and when the colleague returned from this meeting he told Plaintiff he could no longer help him because there was an urgent project he needed to work on for another employee.

62.     Plaintiff then went to this other employee's office and confirmed, orally, with both the employee and his supervisor, that there was no immediate project that Plaintiff's colleague was assisting with.

63.     The Company's refusal to let its employee talk with another colleague about their work was certainly not the norm, and collaboration was not only encouraged but expected.

64.     Defendant was aware that due to Plaintiff's disability the task would be much more difficult to conduct without the ability to collaborate and thus Defendant charted this course, similar to asking someone with difficulty walking to arbitrarily carry heavy boxes.

65.     Plaintiff repeatedly brought this to the attention of HR and Curtis-Bey but he was actively ignored and dismissed.

66.     Upon his return from FMLA and the expiration of his PIP, the Company retaliated and terminated Plaintiff on September 19, 2019.

67.     Only after Plaintiff was terminated did Defendant agree to investigate his prior complaints only if Plaintiff would waive his claim to a severance package.

68.     When unlawfully terminated, Plaintiff was qualified for his position and could perform his essential functions of his role as a Program Instructor. The requested accommodation would have allowed him to equally access to the benefits and privileges of employment that are enjoyed by similar-situated employees.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of ADA)

69.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

70.     Defendant is subject to the ADA as it is an employer with in excess of 15 employees.

71.     Plaintiff was disabled within the meaning of the ADA and was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation.

72.     Plaintiff suffered adverse employment actions by being subjected to hostile working environment and ultimately terminated because of his disability.

73.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in in violation of the ADA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

74.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental

anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief;

75.     Defendant's unlawful and discriminatory conduct in violation of the ADA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of ADA)**

76.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

77.     Plaintiff participated in a protected activity by complaining of the discrimination he was suffering because of his disability, and Defendant was aware of these complaints.

78.     Plaintiff was subjected to a hostile working environment and terminated from his employment, and there exists a causal connection between his adverse employment action and his protected complaints.

79.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in in violation of the ADA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

80.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

81.     Defendant's unlawful and retaliatory conduction in violation of the ADA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### THIRD CAUSE OF ACTION
### (Retaliation in Violation of the FMLA)

82.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

83.     Plaintiff was employed by Defendant since 2010 and worked for at least 1,250 hours in the twelve months preceding the leave.

84.     Defendant is subject to the FMLA as it is an employer with in excess of 50 employees.

85.     Plaintiff asserted his rights by making valid request(s) for FMLA leave and taking such leave.

86.     Defendant terminated Plaintiff in response to his need for, and taking of, such leave.

87.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in in violation of the FMLA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

### FOURTH CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)

88.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

89.     Defendant discriminated against Plaintiff on the basis of his disability by, inter alia, terminating Plaintiff.

90.    As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.

91.    As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental and anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

92.    Defendant's unlawful and discriminatory conduct in violation of the NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### FIFTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)

93.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

94.    Complaining to the Defendant about the discrimination he was suffering at the hands of Defendant because of his disability constitute protected activities as defined in the NYSHRL.

95.    Defendant retaliated against Plaintiff in violation of the NYSHRL by, *inter alia*, terminating Plaintiff because of his protected activities.

96.    As a direct and proximate results of Defendant's unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or

economic damages, including but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an wared of monetary damages.

97.      As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotion distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical illness and injury, for which she is entitled to an wared to monetary damages and other relief.

98.      Defendant's unlawful and retaliatory conduct in violation of the NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**SIXTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYCHRL)**

99.      Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

100.      Defendant discriminated against Plaintiff on the basis of his disability by, inter alia, terminating Plaintiff.

101.      As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.

102.      As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer severe mental and anguish and emotional distress, including but not limited to depression, humiliation,

14

embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

103.    Defendant's unlawful and discriminatory conduct in violation of the NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)

104.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

105.    Complaining to the Defendant about the discrimination he was suffering at the hands of Defendant because of his disability constitute protected activities as defined in the NYCHRL.

106.    Defendant retaliated against Plaintiff in violation of the NYCHRL by, *inter alia*, terminating Plaintiff because of his protected activities.

107.    As a direct and proximate results of Defendant's unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an wared of monetary damages.

108.    As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotion distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical illness and injury, for which she is entitled to an wared to monetary damages and other relief.

109.    Defendant's unlawful and retaliatory conduct in violation of the NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A.    A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the ADA, FMLA, NYSHRL, and NYCHRL;

B.    An order directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory and/or otherwise unlawful conduct, as well as to take such affirmative action, including reinstatement, as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff.

C.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to the loss of pass and future income, wages, compensation, job security and other benefits of employment;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem self-confidence and personal dignity, emotional pain and suffering and any other physical or mental injuries;

E.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

F.      An award of punitive damages, pursuant to ADA, NYSHRL and NYCHRL, in an amount to be determined at trial;

G.      An award of damages for any and all other monetary and/or non-monetary damages losses suffered by Plaintiff an amount to be determined at trial, plus prejudgment interest;

H.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by laws; and

I.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: July 1, 2020
      New York, New York               Respectfully submitted,

                                     DANNY GRACE, P.C.
                                     *ATTORNEYS FOR PLAINTIFF*

                                     222 BROADWAY, 19TH FLOOR
                                     NEW YORK, NY 10038
                                     (646) 515-2821

                                _____/S/_____
                                     DANIEL GRACE